Good afternoon. This is the time set for re-hearing on VONT in the case of Rojas v. FAA. I'd say good afternoon. It's a little later on the east coast than it is for some of us, but we appreciate you participating today. The way we will handle this oral argument is that I'll give each of you a few minutes to present your case. I'll interrupt and then I'm going to call on various judges to ask questions. And I will ask both the attorneys, if you are not speaking, please unmute your microphone. All right. Ms. Scott, are you ready to proceed? Ms. Scott Yes, Your Honor. Ms. Rojas You may. Ms. Scott Thank you. The panel correctly decided that Exemption 5 does not shield the APT metrics work from disclosure. Exemption 5 is about intra-agency documents. Intra means within, and agency is defined by statute as an authority of the United States. So to be intra-agency, a document must be within an authority of the government of the United States. APT metrics work wasn't within the FAA. Far from it. When the FAA sent Mr. Rojas a notice denying him a federal job, it told him that the employment test he took was independently validated by an outside expert. It was holding APT metrics out as separate and apart from the FAA to get the benefit of that separateness, to say here's someone outside of us who looked at the test and said that it worked. After having done so, it can't then say that APT metrics work was actually within the FAA the whole time. It's the opposite. The government is arguing that as long as a consultant's work is privileged, then it's covered by Exemption 5. But privilege alone can't get you there. In cleanness, the Supreme Court says that there are two separate inquiries that government has to satisfy in order to invoke Exemption 5. The first is that the document is inter- or intra-agency. And the second is that the document is privileged. And that first inter- or intra-agency requirement has independent vitality. So privilege alone just can't get you there. And all that's left is that APT metrics is an outside consultant. But that doesn't make it work intra-agency, particularly when the FAA was holding it out as an outside expert doing independent work. The panel was right to find that Exemption 5 just can't cover the documents at issue here. Thank you. The first question will go to Judge Wardlaw. You're still muted. Scott, how do you respond to the parade of horribles, including having to turn over attorney work products to a person against whom you are actively litigating, which is the case here, if we fail to adopt a functional or more purposive reading of Exemption 5? So the parade of horribles just isn't presented here. Here you've got someone who the agency is affirmatively holding out as an outside expert doing independent work. They've said it time and again. And so this case doesn't present one of those situations where we might consider if someone has become part of the agency, if the source is an agency, if they're closer to the agency. For example, an attorney who has sort of this, owes ultra-fiduciary duties to the agency, might be integrated with the team, might speak for the agency. You might say that relationship is different than someone the agency is holding out as separate and independent. It would be speculative at this point to say how this is going to affect other actors in other cases. What we have here today is just someone who clearly falls far outside of the rule. And I think that the court should develop the rule over time instead of just ruling broadly in a textual way to try to accommodate those situations in different cases the government has raised. Judge Callahan has the next question. I'm so sorry, your honor. I can't hear you. I'm afraid you're muted. Thank goodness. Can you hear me now? I can hear you now. Okay, great. I have a question. Why does the text of Exemption 5 require us to focus on the status of the author of the document rather than on the role the document plays within the agency? Because it seems like six other circuits do it differently and that this would create a split in the circuit if we were to go with the three-judge panel majority. Yes, your honor. A couple of things. First, I'd like to answer your textual question and then address the other circuits. First, from a textual perspective, the role the document plays in the deliberative process is really a question about privilege. For example, is it covered by the deliberative process privilege? But it doesn't answer that first question, which Clema said has independent vitality. And that's a question about whether it's inter or intra-agency. And for that, the Supreme Court said that you have to look to the source of the documents. The source must be a government agency. So in Clemas, the court was actually looking at the party who drafted the documents. That was the tribes. And it said they were so far outside of the agency that their interests weren't aligned with it, so they couldn't qualify. So the same is true here. You have to look at the source, the person who drafted it. To answer your question about the other circuits and how they've come down, it's true that a number of circuits have adopted the consultant corollary. But that's exactly what happened in Argus Leader. I mean, there you had the D.C. circuit drafting and adopting an atextual reading of an exemption. There was Exemption 4. And a number of courts of appeals, I think it was seven, fell in line. But the Supreme Court reversed and said that we were bound by the plain text of the statute. Something similar is happening here. And the difference is that the Sixth Circuit has actually declined to adopt the consultant corollary, just like the panel majority did in this case. I think we're bound by the plain text of the statute. I'm sorry, Your Honor. There seems to be some support from Justice Scalia's dissent. And ever the textualist, you wouldn't expect to find support for looking at the corollary. So Justice Scalia wrote his dissent in a footnote in a case that didn't reach the question almost, I think, over 30 years ago prior to claimant being decided. And he said that folks having a governmentally conferred capacity might be able to fall within the agency for purposes of Exemption 5. But the governmentally conferred capacity at issue in this particular case is just the capacity of an outside expert doing independent, separate work. In that context, I don't think that we can say that that capacity isn't within the agency. It's the opposite. Thank you, Your Honor. Judge Smith has the next question. Counsel, I want to pursue the issue of the, as I can, of the seven other circuits that have adopted the consultant corollary. I know you take the position that the Supreme Court has, in quotes, overruled them. Is that really your position, that they have overruled these seven other circuits? No, Your Honor, and I apologize if I didn't spoke. The Court explicitly left the question open to claimants. I just think that claimants both support their position. I was saying that the Supreme Court overruled the Courts of Appeals that adopted an atextual interpretation in Artists Later. It hasn't done so here yet. Right, but that's not the same exemption and the same problem that the seven circuits considered, is it? So, in Artists Later, it was a different exemption. It was Exemption 4. Exemption 4 and 8 have an express carve-out, do they not? Both Exemptions 4 and 8, do you mean for documents coming from outside actors? Correct. Yes, Your Honor, and I think the fact that Congress was thinking about outside actors in both of those exemptions, and that doesn't list them in Exemption 5, is telling that Exemption 5 isn't intended to encompass the work of outside actors. Exemption 8 is... But the problem I'm finding is that we've got these other circuits that have adopted the consultant corollary. The Supreme Court has not expressly overruled that. What's your best argument that those circuits were wrong? That none of them are adopting a rule that could be reconciled with the text. I don't think they're even really driven by the text. It's a purpose-driven reading that an agency might have a special need for a consultant. That's what was driven in the D.C. Circuit in Suse back in the 70s, and I think the Second and the Fifth Circuit picked up on that, and a number of courts of appeals fell in line. All of them are taking this practical approach, but that's not text-driven. And then the D.C. Circuit is, as I mentioned before, it's looking at this role the document plays in the deliberative process, but as I was saying, if you're focusing just on the role that the document is displaying in the process, then you're not looking at whether the source is a government agency. That's a separate question, according to the Supreme Court in Clements. And so I just don't think... Those seven circuits also had the text before them, did they not? Yes, Your Honor. I think that they were concerned about the sort of parade of horribles that Judge Wardlaw raised in her opening question. I understand those concerns. I just don't think this case presents those concerns, and this case is a case where the text is just squarely on point. I would like to go back to... Judge Acuda. Go ahead. Go ahead. Just to return to Justice's question about Exemption 4 and 8, I just wanted to point out that the text in Exemption 8 is... It seems to be how the government is construing the text in Exemption 5. Exemption 8 talks about information prepared by, on behalf of, or for the use of an agency. And that really seems to be what a consultant is generally doing when the agency contacts them. So I do think if Congress wanted to use that language in Exemption 5, it would have done so. Thank you. Okay. Judge Acuda? I just wanted to make sure I understand your argument about how the sixth circuit helped you. I know the panel also relied on, I think, Lukasz. But that seems a fairly different situation where the agency was making a request to a foreign government or a foreign entity, as opposed to having the sort of agent-principal relationship that Judge Christen was describing in her dissent in the panel opinion. Can you help me understand better how you think the sixth circuit opinion helped your position? Yes, Your Honor. I agree the sixth circuit opinion isn't directly on point, but the sixth circuit expressly rejected the consultant corollary. It said that the statute doesn't say... I think it was intra-agency, intra-consultant, and therefore in governments. I mean, it doesn't include those things in the text. So the sixth circuit was saying when the statute just says intra-agency, the document actually has to be within the agency, not within a consultant or within a foreign government. And so the same rule applies here. The statute just isn't as broad as the government would like for it to be. I also do want to address your question about common law agency. Judge Christen raised common agency in her dissent, and I just want to emphasize that the government never argued common law agency in this case, and the record doesn't support it, particularly where it's holding APT metrics out as separate and independent. And so it called it an independent consultancy. That's an ER-286, an outside expert doing independent work at ER-339. It is a totally separate organization. And so even if common law agency was something that you could read into the Are you taking the position that an independent contractor, an outside entity, could never be the agent of a principal? Is that your position? No, Your Honor. I'm just saying that APT- That's correct. APT could be an agent of the agency. I don't see why not, especially when it was asked to produce information and anticipation of agency. Is there any rule that would prevent it from being an agent? No, Your Honor. There's not a per se rule that would prevent a consultant from being a common law agent of an agency. It's just the government hasn't proven common law agency in this case, and I don't think the record supports it. I understand your question. In this particular context for this narrow role, when it was drafting these documents, was it perhaps a only focusing on the preparation of the summaries and saying, assuming that preparation was in anticipation of litigation? Is that covered by Exemption 5? I think the problem there is as soon as you are taking such a narrow view of the party's relationship and only looking at their summary of the policy work in anticipation of litigation, you are only asking whether it's a protected work product and focusing on the second inquiry that the Supreme Court established to claim it. But even if the work is privileged, and that's important, and the government is entitled to those privileges, there is a separate independent question of whether the consultant was intra-agency. And here, where they're holding the matter separate in the context of their relationship, I just don't think you can get there. Okay, Judge Wofford has the next question. I have the same question that Judge Wardlaw posed to you, and I'll just confess I didn't find your answer to her question very satisfying, so I'd like to take another run at it. I guess I did view your position as asking us to interpret the statute to say that for a document to be deemed within an agency, its source had to be essentially a full-time employee of the agency and anybody else who was hired, and no matter what the context, no matter how litigation-driven, would by definition fall outside of the scope of the statute as you construe it. So is there some middle ground position that you're advocating? We're not advocating it. The point is just that to the extent that there's a middle ground position, the government would have the burden of proving that and hasn't tried to do so here. I mean, the starting point of the statute is, as you said, the source has to be a government agency. APT Metrics is not a government agency. Its work is outside the agency. You can imagine a situation where someone is fully integrated with the agency. They are on a trial team. They're in the war room. They're going to trial every day, stay in the same hotel, on the agency computers, in the chain of command. They're basically an agency in every way except there's a clause in their contract that's different, and in those circumstances, you might argue in a closer case that there's something about them that makes them agency such that their work is within the agency. This record just can't possibly support it. So I guess you're not taking as absolute a position as I thought you were because you're willing to acknowledge that if, let's say, in the course of litigation, an agency retains an outside expert to provide advice beyond the can of any of its employees, that that person, generated a report which was provided to the agency. You're saying that that would be deemed within the agency or it would be an intra-agency memorandum? I just think that to the extent that an outside expert's work could ever be deemed within the agency, then you would need some fact that actually made them part of the agency, and here the record establishes the opposite. That's like what? I mean, as I said, they're somehow fully integrated with the team. They're reporting up the chain of command. They're under its close control and supervision. I mean, here the agency doesn't even have any apparent record of APT metrics work. I just think that to the extent that the government wanted to establish that there was something outside of just being an agency employee that could make the work intra-agency, it had the burden of doing so, and instead it's advocated for this broad rule that leads to absurd results in this case where you've got someone holding out a separate that they're then arguing it's actually producing intra-agency work. The next question goes to Judge Hurwitz. Thank you. Counsel, I wanted to sort of walk you through this. You're not intending in this case that these supplemental reports or summaries are not work product, that they don't qualify for one part of the test, correct? No, Your Honor. We do challenge that they're protected by work product. Yeah, the documents were... I'm sorry, I don't want to... This isn't the focus of your question. I don't want to distract you. No, well, it is because the panel seemed to assume they were work product, but that exemption five didn't apply because of the intra or intra-agency, and I don't find much in the briefing about challenging... After all, if the exemption applies to work generated outside the agency or inside the agency. So what's your argument that they're not work product? So as a starting point, I agree that the intra-agency requirement is separate from the privilege requirement. It's a threshold requirement, so I do think it makes sense to start there, but as to the work product argument, the argument is in November 2014, the FAA says that it requested these summaries in anticipation of litigation, but the only notice of litigation that it had at the time that it requested the summaries was a notice of suit regarding the 2014 version of the test. The summaries that issue here are about the 2015 version of the test, and the FAA just hasn't drawn in its affidavit a sufficiently strong connection between why it anticipated litigation in connection with that 2014 suit and how these summaries about that 2014 version of the test would be connected to... I'm sorry, how the summaries about the 2015 version of the test would be connected to a 2014 suit. So I have two quick follow-ups on that. The district court thought that these were materials that were subject to the work product privilege. How do we review that determination? DeNovo, you're on it. The FAA wanted summary judgment, so I believe all three rulings are subject to DeNovo review. Okay, and second, this goes back to I think Judge Wardlaw's first question. Let's assume these are work product documents and are privileged. You couldn't get them in a lawsuit, but your contention is you can get them with a FOIA request. Tell me how you see the litigation and the FOIA requests not conflicting with each other. It seems to me particularly in this case where we've got a couple attempts to get information and then a lawsuit and then another lawsuit, two separate sorts of sets of litigation, aren't we really circumventing the court's work product privilege under that circumstance? As a starting point, Mr. Rojas isn't now and never has been a plaintiff in a lawsuit that the FAA and it just can't be the rule that somebody else brings a lawsuit against the FAA and then it makes him unable to request the document that he's entitled to. What about if somebody else had brought it because your argument doesn't deal with the identity of the requester? You say that's really irrelevant. So what if somebody who wants to bring a lawsuit decides, I'll first ask for the document from the FAA and knowing I can't get it in the litigation, get it first and then bring the lawsuit. Does that create a problem? I understand your concern, but I do think you would be entitled to those documents under FOIA. I mean, Congress recognized the importance of privileges when it drafted Exemption 5. Attorney work product privilege, attorney client privilege, deliberative process privilege, all of those are included in Exemption 5. It's just the Supreme Court explained in claimant that there's still an additional threshold requirement that the documents be inter-agency. So we know that the scope of documents that are protected by Exemption 5 is smaller than the pool of documents that are privileged. Next question goes to Jada Collins. So you agree that the Supreme Court in claimant left open the issue of the consultant corollary. They did not decide it. They did not  Okay, but then when you look at Lukacs, that's how you pronounce it in the Sixth Circuit, the court there discusses the common interest doctrine and then it briefly mentions the consultant corollary and then says we appreciate the concern about sister circuits, but when the Department of the Interior made the same argument in claimant, the Supreme Court rejected it. It can have been referring to the discussion of the consultant corollary because the Supreme Court didn't reject that. What it must have been referring to was the broader arguments that underlay the common interest doctrine. Am I reading this wrong? I think they may have been arguing that having interests that merge don't alone make your It certainly can. I mean, the Fourth Circuit in the wake of claimants continues to apply the common interest doctrine, so I think there's a lot of uncertainty and confusion there. The Sixth Circuit sort of came out directly against it, rejecting the consultant corollary in that context. Okay, so now I'm also wondering about what the burden you have to show here because Justice Scalia and Julian admitted that this was not the most natural reading of the terms, but he said that it was a permissible reading, and I'm wondering if that's enough here in light of the 50 years of precedent from all these circuits, the fact that Congress has never seen fit to reject it, and going back to the AG memo from 1967, which mentions that consultants will be covered by the intra-agency provision. Isn't this just a fairly strong body of precedent that if it's even a permissible reading, we should sustain it? A few things, Your Honor. First, I think it's not a strong body of precedent because it's not driven by the text. In Argus Leader, again, there were seven courts. But that's the point. Maynard, I agree that it's not the natural or best reading, and Justice Scalia agreed with that and Julian, but will the words bear that reading at all? No, Your Honor. The text says intra-agency, and the FAA is literally arguing that somebody that sold out as separate and independent is producing intra-agency documents. I mean, intra-agency is about where something is coming from and where it's going. It's starting from the agency, it's ending in the agency, and here you've got an agency that outsources functions to someone outside who's working independently. If any, any of the texts can't possibly accommodate that. But the communication is what has to be, the memorandum is what has to be intra-agency. Why is it a memorandum between the agency and a consultant about the subject of the consultancy and intra-agency for purposes of that memorandum? Because claimants told us that you actually have to look at the source of the document. You can't just focus on the memorandum. And when the source of the document is someone that that source can't produce intra-agency work, otherwise you're not focusing on the source at all. You're just saying anyone outside can produce work that's within the agency. I also wanted to address your statement that there was legislative inaction on this point. The Supreme Court in Zuber stated that legislative inaction is a poor beacon for statutory interpretation. I think that's true here. It's just not clear what Congress had in cases. So I don't think that should guide the court's interpretation. And to your statement that there's been 50 years of precedent, in Milner, there was 30 years of precedent and the Supreme Court still overruled it, acknowledging that it would cause significant disruption because it said it was found by the plain text of the statute. And finally, with that 1967 AG's memo, I don't think it's necessarily surprising that the executive branch has taken a broad interpretation of Exemption 5. But that memo, which was drafted after FOIA was enacted, I don't think should control our interpretation here, particularly when the text is clear in and of itself. I see that I have about four and a half minutes left. I would love to reserve that for rebuttal, but I don't mean to cut off anyone's questions. Certainly. You may reserve. And now I need you to mute your mic, and we'll hear from Mr. Sanders. Good afternoon, and may it please the court, Jeff Sandberg for the United States. At the time FOIA was enacted, it was recognized that under the work product and attorney-client privileges, the advice given to an entity by a non-employee attorney or consultant or expert is privileged and cannot be discovered in litigation. That rule applies to private parties and the government alike. Congress designed FOIA, and more specifically Exemption 5, not to disturb those two common law privileges. Supreme Court held in Sears Roebuck that because Congress intended to protect working papers that would come within the attorney-client and work product privileges, it would protect them from disclosure to the same extent that they would if applied to private parties. And the Supreme Court has repeatedly refused to give Exemption 5 a meaning that would circumvent those privileges. The rule that the panel adopted here, and that plaintiff may or may not be advocating now, would substantially blow up those key litigation privileges because it would implicate any time that the government retained someone who's not directly on the agency payroll, whether as an attorney or an expert in litigation, counsel in a foreign country, agencies with independent litigating authority hiring their own attorneys. Now, of course, Exemption 5 applies to inter-agency or intra-agency documents. Of course, that means the documents have to be within the agency bubble in some meaningful sense. It sounds like my adversary is now suggesting that even she, or even Mr. Rojas, agrees that there are some contractors, some attorneys who are sufficiently within the agency bubble that they should be counted as intra-agency. So it may be that we just have a disagreement about the right functional interpretation to be given that language, but we're both interpreting the term within here. Congress, in defining agency in FOIA and APA, it referred to the executive branch, but it didn't say agency only includes people on the GS scale, or officers and employees, but not ones who give voluntary services, or only people who get their paycheck and W-2 from the agency. Or did it also sweep in people who were paid by the agency, but not people who gave in to voluntary advice? Congress didn't draw any distinction between agency employees, whatever that mask looks like, and agency contractors, whatever that mask looks like. And given the core purpose of Exemption 5, there's absolutely no reason to think that Congress wanted the character of the document to depend on whether the author is a permanent employee or not. And there's really nothing new or novel about this interpretation. This court, in a case called Van Borg versus NLRB in 1985, thought that it plainly followed from the statutory text that documents produced by consults would be protected. And it held that the documents that were issued in that case were not protected only because they were submitted by private parties that were not in a consultative relationship with the agency. Every other court of appeals has similarly thought that this just follows from the plain meaning of intra-agency documents. It doesn't take a lot of textual reasoning to see that people in a close relationship to the agency are within the agency bubble. That's particularly true for attorney-client and attorney-work-product materials, where by definition, you're dealing with someone with a close, formalized, consultative relationship with the agency. Now, where the intra-agency and intra-agency really start to have some bite is in cases like Klamath, where the agency is invoking the deliberative process privilege, which is not a privilege that's generally applicable to everyone. It's only applicable to the government. And the agency in Klamath tried to argue that Indian tribes who are lobbying the government for water rights at the expense of other people were providing the agency with a privilege. And the Supreme Court said, we don't need to decide whether it's pre-decisional and deliberative. Maybe it is informing some agency decision-making process. But what's happening here is lobbying at the expense of others rather than consulting with the agency. This question just isn't hard when it comes to attorney-work-product here. We're talking about someone retained by the agency to give advice just to the agency. And I agree with my proposing colleague that there's no need for this court to reach out and think about interest doctrine or deliberative process privilege or other facts that are not before the court. The important point is that there cannot be, and I think plaintiff even agrees with this, there cannot be a categorical rule that anyone who's not on the agency payroll cannot produce a document that qualifies as intra-agency. That's clearly not what Congress intended. Thank you, Cal. The first question goes to Jeff Collins. So the statutory term is intra-agency memorandum. An agency is specifically defined by the statute as the various specified entities that are covered by FOIA. Why isn't the natural and correct reading of that term to mean that it only applies to communications between entities or persons acting on behalf of entities that are covered by FOIA? Because APT metrics is not covered by FOIA. You can't serve a FOIA request on that entity. Why should communications between that be fit within the term intra-agency memorandum? That's right. But you also can't serve a FOIA request on an agency employee directly. You have to serve it on the agency. And the question is, who counts among the ranks of the agency? And FOIA does not define that. FOIA doesn't talk about officers or employees or temporary or permanent or which men or who, which you're paid. Well, APT metrics is not an agency. And this is a communication between that entity and the agency. So you have a communication between an agency and something that is not covered, an entity that's not covered by FOIA. Why is that captured by this phrase? Because just as with attorney-client materials, when you're in a close consultative relationship with an agency, and remember, what's being searched here is the agency's records. You direct the search to the agency. The agency looks through it and says, I found these materials from Joe down the hall and from Bob on the next floor up and from my hired consultant. And it's intra-agency because it comes from someone who is in a close consultative relationship with the agency. And nothing in FOIA speaks at the level of employee versus contractor. It just says agency is an authority of the government of the United States, which includes establishments and the executive branch. But you have to give that term some content. And what we're saying and what I understand my colleague to be saying is that, yeah, that you need some people who are paid by an agency, not directly on the agency payroll, should be treated as part of the agency for purposes of this exemption. Otherwise, it would completely blow up substantial parts of the government's litigating privilege. One last question. Did you, would you produce in response to the FOIA request documents that are relevant to the subject of the consultancy that are only in the possession of APT Metrics? No, because under Supreme Court precedent, the search only has to be conducted of the agency's files, documents that have been created or obtained by the agency and that are currently in its possession. And so that is something that all three judges on the panel in this case had agreed on, that there's no obligation to ask AP Metrics to search its own documents. So, yes, that can be searched. It's what's at the agency. But so, too, with, you know, you can't submit a FOIA request to an agency's outside attorney or law firm, but you may or may not be able to get those, probably won't be able to get those documents if they're attorney-client privileged. But the FOIA request goes to the agency, but then there's a separate question of whether something is an intra-agency document or not. Very good. The next question goes to Judge Hurwitz. Thank you. Counsel, as I read your position, and tell me how I'm wrong in this, you would read the words inter-agency or intra-agency entirely out of the statute, would you not? Because every time a document is subject to one of the privileges, you could only ask for a FOIA document that's already inside the agency, has to be possessed by the agency. So what do those words add to the statute? Well, Klamath is an example of where it has substantial bias. The agency cannot invoke deliberative process privilege to protect material submitted... No, what Klamath said was those documents weren't within the privilege, didn't it? No, they were not intra-agency. No, but also, it also found they were lobbying documents. So let me make it simpler for you. Is there any work product document to which the words inter-agency or intra-agency add any additional heft under your interpretation of the statute? As to the work product privilege, I'm not sure there is, but I'm not sure about the FOIA. As the work product, your view is it doesn't matter whether it's inter-agency or intra-agency. It only matters if the agency possesses it. It matters, it matters, but that test is satisfied. I mean, Congress intended Exemption 5... Well, it doesn't matter. Just focus on this and see if you can answer it for me. If a work product document is possessed by the agency, in your view, it doesn't matter where it came from, correct? It needs to meet the test for work product privilege under Rule 26B-3-A. I've asked you to assume that. Assume it's a work product document. If it is a document that meets the test for work product privilege under the rules, you don't care where it came from. Is that correct? I think that's right. Your Honor, I tried to rack my brain to come up with an example that I think was a bit, and I couldn't come up with one. But you don't have to agree with me on that, and you don't have to reach that in this case. But the point I was trying to make before is that Congress, in designing Exemption 5, wanted it to work harmoniously as a whole. Intra-agency and inter-agency documents is going to have substantial overlap of documents that are privileged. In some cases, something will not be intra-agency, as in Klamath. Lobbying documents from the outside, even if you might think that they're privileged, are not covered by the term intra-agency memorandum. Klamath never gets to that second point because it says this is not an intra-agency communication. What I'm trying to figure out is what document that you think would be subject to the protection of Exemption 5 and is possessed by an agency. In your view, aren't all those protected, whether or not they come from outside the agency or in it? If they're work product, as I said, I think that that's right. For other privileges, there's more of a question. There's countless, if your law clerks have extra time, there's countless DDC and some DC Circuit decisions. In many of those cases, the privilege question is simply not disputed. The parties agree, yes, these documents would be privileged. The only thing they're fighting about is whether the consultative relationship is sufficiently close to satisfy the intra-agency test. I don't know how I'm doing on my time. Give me an example of a document that would not be available by law to a party other than the agency in litigation with the agency that would not be covered by Exemption 5 if it came from outside the agency. Well, if you won't let me use the example from Klamath, then I don't know. No, I won't because Klamath didn't reach the issue. Give me an example of something that was covered by the privilege. The DC Circuit has said that if the agency, certain communications made to Congress are not protected, although I think that may have been because the privilege wasn't satisfied rather than that it wasn't intra-agency. I mean, the deliberative process privilege is where this comes up quite a bit, and you need to look to whether that person is acting and wearing their agency hat when they're communicating with the agency or whether they're wearing their self-interested hat. And that's where the litigation has been around this. That's where the term intra-agency has had some real bite in recent years. Judge Wofford has the next question. I have two separate questions for you. The first is a follow-up to the last question Judge Collins put to you. I'm sympathetic to your reading of the statute as being broad enough to encompass certain folks who are not on the agency payroll, as you put it, but who nonetheless are deemed to be within the agency bubble, again, as you put it. But if an out-of-pocket consultant fits that bill, I guess I don't quite understand why you say that the consultant need not search its records. Why that doesn't seem to be the case. Well, because the request is submitted to, I think you're right to point out that there's conceptually some tension there, but that is just a feature of the statute that Congress wrote. And as the Supreme Court has interpreted it, the request goes to the agency. And the agency doesn't have, it's not within the scope of the agency's relationship with APT Metrics to compel it to respond to FOIA requests that are directed to the agency. There are Federal Records Act requirements on documents that have to remain within the agency. And so to the extent there's concern about the agency, you know, trying to park or offshore, as I think my supporting colleague has put it, documents with the contractor, there's lots of reasons not to be particularly concerned about that. But you're right that the request is directed to the agency. The agency can only search the records that it currently has on hand. And FOIA, for better or worse, only requires the agency to turn over documents that it currently has and not ones that it could ask for. Well, but doesn't that suggest that perhaps your position is flawed? Obviously, the Supreme Court has staked out the turf in terms of the scope of the search, but it hasn't spoken to the question that we're confronted with here. And so doesn't that tension suggest that perhaps your reading of the statute is wrong? I don't think so. There's nothing, you can't find anything in Supreme Court precedent that suggests it would be appropriate to disclose under FOIA attorney client or attorney before product material of DOJ or a government, you know, any time the government hired an outside entity to help them, that those have to be disclosed because they're not on the agency payroll and because you couldn't submit a FOIA search to one of those outside entities. On the contrary, climate was a unanimous opinion and it recited Justice Scalia's observation that the best reading of the statute textually and structurally was one that would encompass documents prepared by outsiders in a consultative role for the agency. And they didn't, they said they didn't need to, you know, vote up or down on the consultant corollary because the documents there were outside of it. But as Judge Christin put it, it's much more of a benediction than an indictment of the corollary to say, whatever the proper scope of this thing, these documents are outside of it. Okay, if I could, the second question is, you'd use the phrase, I think, relationship to define the necessary connection between the agency and this outside person that's going to be deemed to be within the agency bubble. Can you give us a sense of what test you have in mind, if you were to write an opinion, what that test would look like? Well, this court, I think, could usefully look to the test, the phrases that have been used by sister circuits. The fourth circuit is referred to part of the enterprise that the agency is carrying out. The DC circuit is referred to something being part and parcel of the agency's process or created for the purpose of aiding the agency's process. What the DC circuit has made clear is that it's irrelevant whether the author is a regular agency lawyer, temporary consultant, you need to look to the role of the document in the process, whether it's a consultative document or whether it's, you know, a lobbying document or fulfilling some other function. So, I, you know, I'm hesitant with my opposing colleague for you to sort of declare once and for all what the dollar balance of intra-agency might be, but I think it certainly includes documents as here that were prepared in aid of an agency process, in particular litigation, by one who has been retained by the agency. Thank you. Judge Acuda. Let me follow up on that question. I was interested in Judge Kristen's suggestion that we look at an agent-principal relationship and opposing counsel points as if the government has argued that. What's your position on her suggestion? I don't think that common law agency principles are a great fit for this question because as, like, section 101 of the Restatement of Agencies says, cited in my opposing colleague's response to the petition for panel re-hearing, or re-hearing above, the law of the agency contemplates three actors necessarily, the principal, the agent, and the third party who the agent is going to be dealing with, right? In all of agency's law, though, when can the agent find the principal and the authority, et cetera? In this case, we're talking about just a one-to-one closed relationship. The agency is holding APT metrics much closer than a principal holds a common law agent because the agent is, here, APT metrics is speaking only to the agent. If anything, it's more intra-agency when you don't have someone who is a common law agent going out in the world and acting on your behalf. So I think, you know, although many common law agents may well qualify under our understanding of intra-agency memorandums, like, that can't be the right test because, obviously, if you hire an attorney to give you confidential advice only to you and not to go out and act on your behalf in the world, that person may not be your common law agent, but it's incredibly sensible to think of them as being within the agency bubble, as I think plaintiffs have taken pains to acknowledge. In response to Judge Osberg's question, you said, well, maybe there's a hard and parcel test. Do you think the best test for determining who's inside the agency bubble? That seems like it might be a bit hard to apply. That's right. The language used by the D.C. Circuit is part and parcel of the agency's deliberative process, and that seems to speak to the deliberative process privilege more than to other privileges. And so, you know, I tend to think of it as more in aid of some agency process rather than part and parcel. If the purpose of the document, the role of the document is to aid in a consultative way with something that the agency is trying to do, whether it's prepare for litigation or make a decision, a policy decision, then that is an intra-agency memorandum. As you know, exemption 4 and 8 of FOIA specifically reference documents from third parties and what can be done with them. If Congress intended for Exemption 5 to do the same, why wouldn't it have made it more explicit like it did in Exemptions 4 and 8? If Congress had used the language like in Exemptions 4 and 8 in Exemption 5, then Exemption 5 would speak much more broadly than we're advocating for here. We're saying Exemption 5, the term intra-agency memorandum, only covers those who are in consultative relationship with the agency, be they agency employees or outside advisors. Exemption 4 talks to documents obtained from a person that are commercial, and that's, you know, that could be for any reason, for any purpose. It doesn't have to be consultative. Then with Exemption 8, it reports prepared by or for the use of an agency in supervising financial institutions. That speaks much more broadly. Neither Exemption 4 nor Exemption 8 use the term intra-agency, which is what we're trying to interpret here, so I don't think that the broader, you know, language used there helps us in understanding what it means for a document to be within the agency. Despite what Justice Scalia says about the more natural or better reading of the intra-agency language, it really is awkward, is it not? I mean, we're dealing with something that under the text is troublesome. I'm concerned about the fact that if we adopt your approach, it runs directly contrary to FOIA's intended purpose, which is to have more transparency in government. It seems to cut both ways. If we go the other way, we have this big hole cut into the litigation framework. On the other hand, if we adopt your approach, we close a lot of doors. Here's a guy who wants to be an air traffic controller, and he can't find out why he wasn't able to do so. It doesn't make a lot of sense, does it? Two points of response to that, Your Honor. First, what Justice Scalia said is that the most natural reading of the phrase intra- and for intra-agency memorandums in isolation was the one that we've been discussing. If you read the rest of that footnote quoted in the claimant, he goes on to say the best reading of that in context, which is how we interpret statutes, in context with regard to the surrounding content, the only possible reading of the statute is the one that we're advocating here. So Justice Scalia didn't even say the most natural reading of this scheme is that it's to your point about narrow construction. That has been part of FOIA cases from the beginning, because Congress, in the committee report, said we intend for these exemptions to be read as narrowly as consistent with efficient government operation. And this court and the Supreme Court, when invoking the narrow interpretation canon, have referred to this consistent with efficient government operation language. So the narrow construction principle isn't about just, if you can hypothesize a narrow reading, you have to go with it. It's about making sure that you're not sort of destroying effective government. It has to be consistent with efficient government operation. But that can inform, of course, the court's thinking about whether someone who is just a joshua off the street who offers his advice to the agency, whether that person is in a consultative relationship with the agency or not. It's a bad draft exemption, is it not? It's a very badly drafted exemption, is it not? It could be better. Hey, look, it refers to memorandums or letters. And since the start of FOIA, everyone has agreed that memorandums or letters include documents. And so Congress refers to inter-agency or intra-agency, which sort of suggests that it's trying to capture the breadth of documents that are within the government. But then there are questions you have to think about, okay, the president is obviously within the government and those documents are privileged. But the D.C. Circuit had to work through some of these more difficult questions. And Doug was absolutely right that climate says that it's not purely conclusory. Inter- and intra-agency can't be purely conclusory. But the real work that it does is, as I said, in the deliberate process scenario where the agency in the past has tried to invoke, and you can think of it as a broad use of the privilege, as I think Judge where even our opposing parties don't contest that the document is privileged. They're just fighting on the intra-agency issue. And so, you know, my interpretation does not render the statute nugatory. And more importantly, my interpretation has been the interpretation we've lived with for 50 years. And to come up with anything different now would be a sea change in the way that FOIA has worked. And there's no indication that Congress, from the beginning or now, intended to just disrupt the way that the relationship between civil discovery privileges, especially those broadly applicable like attorney work products and attorney clients, and the way that FOIA works. And it's true that Mr. Rochofsky- It is a badly drafted exemption then, right? Lots of litigation, nobody knows what it means. Well, I won't fight with you that there's lots of litigation. And I won't fight with you that it could have added a definition that said agency includes employees, paid contractors, and others in a sufficiently formal consultative relationship, right? Congress also could have added a definition provision to exclude our interpretation. Congress has amended FOIA countless times, including in 1974, to add a definition of agency. And it's never, you know, their consultant corollary, so-called consultant corollary cases, even before 1974, Congress didn't overrule them in any of the myriad definitional amendments it's made since then. So, I think the best course is to give the exemption its common sense, practical meaning, which a majority of the Supreme Court has implicitly endorsed, and which all of the court's sister circuits, say some dicta in the Lucan case, have also recognized is what the statute's got to mean. Thank you, Justice. Judge Callahan? So, the Supreme Court, and you've kind of been going back and forth on this, the Supreme Court has cautioned against draining the inter- or intra-agency requirement of independent vitality. And it certainly seems that the consultant corollary might run afoul of that, since no one can come up with any explanation. Is it just like, since this is the way we've always been doing it, and just keep doing it that way, and there is no breath of air in this? You know, I don't know. I don't think so. I think it's useful to understand the context in which CLAMIPP came about. CLAMIPP was a very aggressive invocation of FOIA Exemption 5. These were documents submitted by Indian tribes lobbying for water rights at the expense of other parties. This was not like Suse or Wu or Hoover or other cases where it was like paid consultants, or even formaldehyde institute from the D.C. Circuit, another case that I think it would be good for this court to take a look at, where it was outsiders responding on a proposed academic publication with their peer-reviewed comments on what could be improved. CLAMIPP was a situation where parties were lobbying the agency, and the Supreme Court was firing a shot across the bow, saying, you know, whatever intra-agency means, whatever, so it doesn't go this far. And so, I don't take the Supreme Court in saying that intra-agency has to have independent vitality to be overruling implicitly all of the cases that came before. It's just saying, look, this means something, and today, behold, it means... No one knows what it means, but no one knows what it means. We just know what it doesn't mean. Okay, thanks. All right, so I think in light of CLAMIPP, you have to independently examine the first condition, at first, and then the second condition. So, that's the summary in this case, are summaries that were asked to be prepared of work that that message did to independently validate the revision of the air traffic controller cap that had flunked so many well-qualified traffic controllers, and, you know, there was a juror, there was a press, so the FAA went and revised that, and then they sent it over to ATMETRICS and said, we need an independent validation that now this test is fine because we're expecting litigation, but there was a juror. And so, the ATMETRICS independently validated. You make an argument that this is a sufficiently-caused, complicated relationship that it comes within interagency, and I just... So, first of all, that really complicated relationship when ATMETRICS is being asked to do is to validate something that the FAA did, because the FAA was afraid they were about to be sued by a lot of people. The first iteration of this test was such a disaster. And I guess, secondly, I do think you have to have a textual book for interagency, and this post-consultative relationship, you're not arguing it's an agency relationship, it's coming to certainty under. You're not telling us specifically what that agency is. And so, how does it apply here, when the agency didn't even work with ATMETRICS to independently validate this product? There are a lot of important questions in there, and if I may give a full answer, my time's over. So, and it's useful to focus on the facts of the actual case before the court, too, as well. So, ATMETRICS was retained by FAA to take a look at FAA's hiring practices for air traffic controllers and to recommend improvements thereto. And so, that is certainly a close consultative relationship. That is an agency hiring an outside expert, and there's been some cases about whether FAA really needed to hire the outside expert or not, but that's sort of neither here nor there for this point. So, ATCMETRICS did work in the ordinary course to look at the agency's practices, and it conducted some validation activities. At some point, the Office of Chief Counsel at FAA asked their contractor, hey, we know you've been all this work. Can you prepare for us some summaries of what you've been doing? Because we are expecting litigation about the change in our hiring practices. And those are the documents that ultimately turned up when the agency did its search. The agency looked for everything that had anything to do with the biographical assessment, and indeed, the agency's request was farmed out to four different parts of FAA. Plaintiff has abandoned his challenge as to everything except for this one particular office within the Office of Chief Counsel. The only material that was turned up in the Office of Chief Counsel were summary documents prepared in anticipation of litigation, and that's obviously attorney work products because the reason that those documents were created was that a specific request to generate extra work that otherwise wouldn't have been done because it was anticipation of litigation. And if I may, on the adequacy and scope of the search issues, which I also understand before the en banc court... You haven't really answered my question. I don't think the majority agreed on both of those things. So I really think you should answer my question about what are the contours of this close consultative relationship and how does it apply when the situation is they didn't work together, but they were asked to independently validate. They did work together. They were retained to make recommendations. For the 2014, these were revisions in light of the criticisms of the 2014. My concern here is, this is contrary to, you know, the four-year commercial disclosure, because it seems as though Office of Legal Counsel of FAA, they didn't ask for any records. What did you do? Which I'm sure is still out there and still of interest to some people. They asked for something in litigation, but they didn't really consult with our metrics in preparing. I don't know if that's true, Your Honor, as a factual matter. The only thing that's before you here is the response by the Office of Chief Counsel and not the response by the human resources part of FAA or the air traffic organization. I mean, presumably, Frank isn't happy with whatever documents were produced in response to those parts of the FAA request. Otherwise, we wouldn't be here. But all we're looking at is this one little office within the Office of Chief Counsel. All that they had asked for was summaries. All they got was summaries. All we've now turned up are summaries that were prepared in anticipation of litigation. And indeed, the parties agreed in discrete court to cancel a settlement conference because they stipulated in a document you can find in the Supplemental Excerpts of Records that the only thing at issue was whether these documents were subject to withholding under B-5. This is really important here. What is your textual hook for this complicated relationship that you're arguing for? It's the term intro, within. Something is within the agency in a meaningful sense when it is prepared by an agency officer or agency employee or someone who's in a complicated relationship with an agency or an outside attorney or contractor. I mean, it's hard to come up with words that are going to be both precise enough to sound precise to your ear, but also cover all the things that Congress clearly intended to cover when it said, hey, Exemption 5 is covering work product privilege, attorney-client privilege, and other discovery privileges applicable to the government. So the best I can do for you is just to say a sufficiently close, complicated relationship. And I think that's certainly met here. A plaintiff has suggested that because in the rejection notification Mr. Rojas received that the document was independently validated by outside experts, that that somehow removes them from being an agency consultant. And I don't think that's right. But if you disagree with me, that would be a reason why in this case, the document wouldn't be intra-agency. It wouldn't be a reason to blow off the proper rating of intra-agency for all cases in the circuit. I think there's a narrow ground that this panel could have decided upon if the prior reduction of the summary did not blow up the notion of a consultation for all areas. I'm sorry, I didn't quite catch the start of your question. What I'm saying is your last comment suggests that you think there's a narrow ground that now the majority could have decided to take upon that would not also have said that. Yes. We don't think that we should lose this. We think that APT Metrics is an agency consultant within the meaning of any proper understanding of that test. But my opposing colleague at the start of her time at the virtual podium here said, look at the rejection notice that Mr. Rojas received. It said this was independently validated by outside experts. That representation is inconsistent with this being an intra-agency document. I don't think that that takes the exemption out of exemption five. But if you disagree with me, that would be the way to go rather than to get rid of the, you know, to say that intra means only agency employees, period, for all cases, which it would not be, I think, the right way to go given that no other circuit has found that to be the right interpretation. The Supreme Court, even though it has opportunities to say so, has not said that it has to be an agency employee. Yes. Council, I just have a couple of quick questions. Getting back to the case at hand, this is a prescreening test. This is a prescreening test. And prescreening tests for employees are governed by EEOC guidelines. And the EEOC guidelines that and they require validations to be kept in document form. Is that right? My understanding is the EEOC guidelines call for validations to be done. My understanding is that they're not legally binding, but there's certainly best practices and, you know, federal agencies strive to do it. When this particular office of the Office of Chief Counsel was asked for where's that underlying validation data, they didn't have it. And that's all I can really tell you based on this record. I mean, we're not saying that FAA doesn't have that in some other office. We're not going to have to be contested whether it could come from some other office. And certainly APG metrics, if it prepared summaries, it must have something that is what summarizes it, right? But you can't get that by submitting a FOIA request to APG metrics. So... Well, the FAA, I think it was Ricky Collins from the FAA. He was from the FAA. He did say a validation of any pre-screening test. And two, the results of that validation in public. Yeah, he did say that. Ricky Cannon did say, the assistant administrator, that FAA validates its tests. That's right. And FAA, you know, I'm not arguing FAA didn't validate its tests here. The process was a little bit different because FAA had a real crunch to hire in 2014 and so they didn't have the time to produce the sort of several hundred page validation report that it released publicly as they had done in prior years, which is a plaintiff's main grievance in this case at the PANELPOP stage was that the agency used to release hundreds of pages of documents about the validation and then it didn't do it for 2014 and 2015. It was, you know, the validation was undertaken, but it was not, the fruits were not released in the same way because the whole process was just moving more quickly. All that we can release under FOIA though is what we have in this particular office at that issue before this en banc court is the office of chief counsel employment and labor law division. And all that they had were summaries prepared in anticipation of litigation. So, you know, whatever the court's concerns about the behavior. No, no, I think my concern is whether the FAA can conceal documents that are supposed to produce by secretly filing them in the office. If there were some, I don't see that that's an issue in this case. I mean, there's other litigation about FAA's change in hiring practices brought by Mr. Rojas's attorney in the circuit and, you know, other cases have gotten into whether the agency acted in a reasonable manner in making these changes. And I think kind of the suggesting may well, you know, be appropriate to litigate in that forum, but all we can do for you under FOIA is cough up what we have here. And what we have here in this office at issue here is summary documents prepared in anticipation of litigation. And so to the extent the court has broader concerns about FAA's hiring practice, it's just this case can't be the vehicle for redressing. Thank you. Rebuttal. Thank you, Your Honor. A few things. First, I just want to highlight how this case really epitomizes the transparency concerns that will arise if the court adopted a broad concealment corollary. Here, the FAA denied Mr. Rojas a federal job and said this test was validated. Great employment test. That's why you can't have a job with us. So Mr. Rojas sent the FAA a request for those validation studies that it referenced in his denial letter. And the FAA told him that you can't have those. We don't have them. They're with our private consultant. Our private consultant isn't subject to FOIA. And so all we have are these summaries of the validation work. That's the only apparent record that we have of whatever validation work occurred. But even though that private consultant isn't an agency, now we're saying that his work actually is within the agency, that outside the independent work is actually part of us. So you can't have that either. So the government's interpretation is closing off any avenue that Mr. Rojas has into the validation work that the FAA actually cited to him affirmatively as a reason to say that he couldn't have a job as an air traffic control specialist. The government is also arguing that this narrow compass is consistent with efficient government operations. Claimant just says FOIA exemptions are to be narrowly construed. Consistent with the goal of broad disclosure, these exemptions have been consistently given a narrow compass. And that's certainly the way the court has interpreted the exemptions consistently in the past. FOIA is a broad disclosure statute. The goal is to prevent sort of secret government actions. And that's exactly what's going on here. The FAA added a personality test that screened out thousands of qualified air traffic control applicants. And we have no idea whether that test even correlates with job performance, because we just can't get at what it was doing. The FAA doesn't have it, and we can't have what it has, because it's both not the agency and intra-agency. That just doesn't make sense. And finally, the close consultative relationship test to a standard that the government is citing just doesn't have any basis in the text. The text says intra-agency within the agency. It doesn't say close. It's not that one step removed. You just can't get there from the statute. Thank you, counsel. He's just argued to be submitted for decision, and we will be in recess for five minutes while we assemble in the breakout room. Hear ye, hear ye, all persons having had business with the Honorable United States Court of Appeals, the circuit will now depart. The court for this session stands adjourned.
judges: Thomas, Wardlaw, Graber, Rawlinson, Callahan, M. Smith, Ikuta, Watford, Hurwitz, Collins, Bumatay